THOMAS PRAY, JR. *vs.* STANDARD ELECTRIC COMPANY OF VERMONT.

Suffolk. November 17, 1891. — February 25, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Cancellation of Contract — Election.*

A corporation entered into a written contract of employment with P., an inventor, by the terms of which he was to enter its employ at a certain salary per week, "during the life of this agreement," and was to describe the process used in his invention by a writing to be sealed up and deposited with a trust company. They then executed an agreement with the trust company, which, after reciting that P. was to make the deposit with the trust company, and pay a certain sum for its safe keeping, provided that the deposit "may be withdrawn," and the care thereof cease, upon a "written request" from them to the trust company. The deposit was made, and the employment continued for several months, when the corporation, desiring to close that branch of its business, began negotiations with P., which resulted in an agreement for the cancellation of the contract of employment, under which the business was to be closed up as of a certain date, the salary to be paid to P. to that time, a bonus paid him besides, and an order given him by the corporation upon the trust company for the release of the paper on deposit. The corporation paid to P. the balance due for salary and the bonus agreed upon, which he retained and receipted for "in full settlement of cancellation of contract"; and it also gave him a written request to the trust company that the deposit might be withdrawn by him. The trust company declined to deliver the deposit to P. without a formal vote of the corporation. After a long correspondence between the corporation and P., and a delay of several weeks, the vote was passed, and the deposit was delivered to P. He then brought an action for salary from the date named in the agreement for cancellation to the date of the delivery of the deposit to him. *Held*, that a finding was warranted that the contract of employment was terminated at the date named in the agreement of cancellation, and that the action could not be maintained.

CONTRACT, upon an account annexed, to recover $650 for salary alleged to be due the plaintiff from September 29 to November 14, 1888, under a written agreement. Trial in the Superior Court without a jury, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff and the defendant entered into a written contract, dated January 3, 1888, by the terms of which the parties agreed, in substance, that the plaintiff should undertake the manufacture of a certain kind of incandescent electric lamps,

of which he was the inventor, for the defendant, the latter providing machinery, materials, etc. for the manufacture.

The contract provided, among other things, that the defendant should pay the plaintiff for his services the sum of one hundred dollars a week, from January 2, 1888, "during the life of this agreement"; that on or before March 20, 1888, the plaintiff should reduce to writing a full and complete description, with diagrams where necessary, "of the process or processes of making his silk carbon," submit the same to certain officers of the defendant corporation, and then seal up the same in a package, and deposit it with the New England Trust Company of Boston, or such other depositary as might be agreed upon, and to do the same with any subsequently discovered improvement in such process; and it also contained other provisions as to the ultimate disposition of the package or packages, not material to be recited, and all expressed to be " during the life of this agreement."   On March 13, 1888, an agreement was executed in triplicate by the plaintiff, the defendant, and the New England Trust Company, referring to the provisions of the contract in suit as to a deposit of papers with the trust company, and providing that the plaintiff was to deliver to the trust company "one or more sealed envelopes," and pay a certain sum for the "care and keeping" of the same; and that "said envelopes may be withdrawn, and said care and keeping shall cease upon the written request to said trust company " of the plaintiff and the defendant.

The deposits were made, as contemplated in the agreements, with the New England Trust Company, and the parties continued their business thereunder, manufacturing electric incandescent lamps, making experiments, etc., until some time in September, 1888, when the defendant desired to close up business in Boston, where its manufacturing had been carried on, and to sever its connection with the plaintiff under the agreements, and negotiations were begun to bring about that result.

One Hazen, the treasurer of the defendant corporation, on or about September 15, 1888, had a conversation in Boston with the plaintiff as to closing up the business; and Hazen testified, in substance, that an agreement was reached for the cancellation of said contract, subject however to the approval of Franklin

Fairbanks, the president of the defendant company; that the terms of this provisional agreement were that the business should be closed as of· September 29th following, and that the plaintiff should receive, in addition to the salary up to September 29th, the sum of $400; that the plaintiff should use his best endeavors to aid in disposing of the property, and should pack the same before September 29th to be shipped to the order of the defendant; that the defendant should give the plaintiff an order upon the New England Trust Company for the release of the papers deposited in pursuance of the contract, and a letter stating that its wish to close up the business did not arise from any fault found with the plaintiff or his lamp; and that Hazen made a memorandum thereof in writing at the time of the interview, and read it over or showed it to the plaintiff, which memorandum was put in evidence, and was as follows: " Pray will close up business to September 29, we to continue his salary to October 27; say $400, from September 29.   Pray will use his best endeavors to help us dispose of the property, pumps, lamps, etc., and will pack same before September 29, to be shipped per our order.   Release to N. E. Tr. Co.   Letter to Pray."

Hazen then went back to St. Johnsbury, Vermont, whence he had come, and where the home office of the corporation was, and the following correspondence ensued.

On September 18, Hazen wrote to the plaintiff: " I enclose letter as we talked, and hope you will be able to report something encouraging between now and Saturday morning. If it seems best to close the thing up, will wire you Saturday, but hope it will not be necessary. Wish you would cut down that bonus to $300, as it looks a little big at this end of the line."

The letter enclosed was from the defendant by Hazen, treasurer, and was returned by the plaintiff as unsatisfactory, in his letter of September 19, which, after referring to the agreement for cancellation of the contract, contained the following: " To all of which I agree, for a specified sum of money, all my personal property, and an open letter from you as secretary or treasurer of the company, setting forth the facts, and clearly stating so that no misunderstanding could arise in any third party, that such action of the Standard Electric Company of Vermont was for no fault of my management, nor for fault of

the lamp. To this you agreed, subject to Colonel Franklin Fairbanks's approval and direction. . . . Now, as to terms of settlement between us, I named a sum I would accept on condition of a legal surrender by your company to any claim to either lamp or to papers at New England Trust Company, or my services, and the document as above stated."

This letter of the plaintiff was answered by Hazen, in a letter dated September 21, containing the following: "I want to fix this as you wish it, and to this end enclose herewith two letters of same date and similar tenor. . . . Now as to closing up. Much as I dislike to do it, there seems no other way. We therefore hereby instruct you to arrange to move out on or before September 29th. . . . The point is, we wish to wind up, so far as we are concerned, on the 29th, . . . and we will write and formally accept your proposition, as arranged with myself, when we hear from you as to your action in closing up."

One of the letters referred to in the foregoing was returned by the plaintiff, being enclosed in the following letter of September 22, from the plaintiff to Hazen: " The letter you sent in yours of 21st is exactly what you and I talked, and I return the other in this, and am duly obliged for the one I keep. I shall commence Monday to close up as you instruct, and, as I understand it, am to get boxes for the pumps, dynamos, etc., and store them somewhere for account of your company. Am I correct? The proposition agreed on between you and me is, as I understand it, to be formally accepted and executed. General Shepard will have a legal and formal release from all claims on your company ready to execute when you send check, release, and agreement with New England Trust Company, by which you surrender all claims to my services, my lamps or processes, and deliver to me all papers in their custody."

The letter retained by the plaintiff, and referred to in the two preceding letters, was dated, like the one returned, September 18, and contained the following: " Referring to our recent interview concerning that branch of our business under your charge known as the Pray Lamp Department, beg to say, owing to the death of our Ex-Governor, Horace Fairbanks, and consequent new business connections recently formed, but not through any mismanagement of yours or complaint against the lamp, it

becomes necessary for us to discontinue the manufacture of incandescent lamps, and we wish to cancel our contract with you, and dispose of the manufacturing plant at once."

On September 24, Hazen wrote to the plaintiff as follows, among other things: " Sell anything you can; and concerning cancellation of contract, all that is necessary is for you to cancel your copy and send to us, and we will cancel our copy and send to you, with the release at the trust company, and check to balance accounts when you get all settled up."

On the same day, the plaintiff wrote to Hazen : " Send along your release and cash, so we can close all up before Saturday and have no open account."

On September 25, the plaintiff wrote to Hazen as follows : " Your letter [of 24th] and telegram at hand.  My contract will not be cancelled until payment is made.  Your own proposition was to pay me up to October 1, and four hundred dollars on September 29, and to furnish me a release from claim on my services, or any papers now in New England Trust Company.  You made that as a memorandum on piece of paper, and your letter of 21st, page 2, says, ' And we will write and formally accept your proposition as arranged with myself when we hear from you about closing up.'  I've written you that I am closing up as directed.  Now please carry out the arrangement, and put down the cash as you agreed, so I can get away as I have already advised you.  I am ready to close it to-day or to-morrow, and shall do exactly as I agreed."

On September 26, Hazen wrote to Pray : " We hereby accept your proposition for cancellation of contract as verbally arranged between yourself and the writer as follows.  You to close up the works at 164 High Street, and have everything ready to move out on or before September 29, giving your help proper notice to close work at same date.  We to pay your salary and expenses in usual manner to September 29, and in addition to pay you a bonus of four hundred dollars for cancellation of contract, check for same being enclosed herewith with voucher for signature. You to use your best endeavors, both before and after September 29, say through the month of October, to help us dispose of the property at aforesaid room, including lamps, tools, apparatus, etc., without further remuneration ; this clause, however, not to

be construed to denote that you will devote your entire time to this work. We to give you a release of the papers deposited with New England Trust Company, which release we enclose herewith. In acknowledgment of this, please send us proper release of contract, and oblige."

The following is a copy of the release enclosed: " St. Johnsbury, Vt., Sept. 26, 1888. New England Trust Co., Boston, Mass. Gentlemen, — Reference to certain memorandum executed by Standard Electric Company of Vermont, Thomas Pray, Jr., and New England Trust Company, under date March 30, 1888, please note clause reading thus: ' Said envelopes may be withdrawn and said care and keeping shall cease upon the written request to said trust company of said electric company and said Pray.' In accordance herewith we hereby request that the said envelopes may be withdrawn by said Thomas Pray, Jr., at his request and pleasure, and said memorandum may be considered cancelled." This was signed for the defendant by Hazen as treasurer.

On the same day, but dated September 25, the plaintiff wrote to Hazen : " We are pushing to finish, and I want you to close up all, and as we agreed. I want the release to file with the New England Trust Company, Saturday A. M., so as to withdraw the deposit, and also want to be in shape to negotiate with other parties. Will you forward the formal letter, as promised in yours of September 21st, and please sign it in your executive capacity as an officer of Standard Electric Company of Vermont, or simply send the Colonel Franklin Fairbanks signature that he will see it paid as agreed."

On September 28, in a letter to Hazen, among other things the plaintiff wrote as follows: " I have notified them [i. e. certain persons referred to in the letter] that I 've closed my connection with your company pleasantly."

On October 3, the plaintiff enclosed in a letter to Hazen an account, to which no objection was made, in which he charged a debit of " Bonus on contract, $400," and at the same time gave credit, " By check, $400." This letter contained the following : " I am finally glad to be able to enclose final account, showing a balance due me of $107.62, which please send me. . . . The deposit matter I am unable to arrange until their counsel looks

it over, but I will try to get possession to-morrow, and will send cancelled contract to-morrow or next day, as quick as they will act. Now I have arranged to leave here at 1 P. M. Saturday, and will have all closed up, finished, etc., as far as I go; and if I don't hear from you then will leave final receipts in full to date, as agreed with contract, with General Shepard. . . . I now wish your company all success, and respectfully close my connection with you as their representative, pending your payment to me as above, with best wishes for all; shall be glad to answer any questions or help as I can."

On October 4, the plaintiff wrote to Hazen: "I have not got the deposit papers yet. They go to General Shepard if after I go. I shall stay till closed if at once."

On October 5, Hazen wrote to the plaintiff: "Your statement, as rendered, shows balance of $107.62 due you, and please find checks for that amount, which please send receipts for in the usual way, as well as for the $400 sent you, for our voucher files. . . . This, I believe, closes up matters between us, and please have contract cancelled and sent, and say if I shall send our cancelled copy to yourself or to General Shepard."

On October 6, the plaintiff wrote to Hazen, acknowledging the receipt of the check " enclosed for one hundred and seven and $\frac{62}{100}$ dollars on account"; and continued, " I am not yet closed with New England Trust Company, but am away now until Monday P. M. . . . Enclosed receipts for four hundred and one hundred and seven and $\frac{62}{100}$."

The receipts were as follows: " Boston, Sept. 29, 1888. Received of Standard Elec. Co. of Vt. four hundred dollars in full settlement of cancellation of contract as per. their written acceptance of proposition. $400. Thomas Pray, Jr." — " Boston, Mass., Oct. 6, 1888. Received from the Standard Elec. Co. of Vt. one hundred and seven $\frac{62}{100}$ dollars on account of statement. $107.62. Thos. Pray, Jr."

On October 8, Hazen wrote to the plaintiff as follows: " The enclosed letter formally closes matters between us. . . . Shall hope to hear from you with cancelled contract by Wednesday .surely, so everything may be fully settled up before I go."

The enclosed letter was as follows: " We enclose herewith our copy of contract with you, duly cancelled as per late agreement, and this releases you from all obligation to this company.

Please cancel your copy of contract and forward by return mail if possible." It was signed, "Standard Electric Co. of V.t., P. F. Hazen, Treasurer."

On October 9, the plaintiff wrote to Hazen : " I return your letter of Sept. 26, returned this morning by Mr. Whitney, see his note on corner. He tells me they require a vote of the directors authorizing the delivery of the deposit by the New England Trust Co. to me, certified to the record by the Secretary of Standard Electric Co. of Vt., and that being presented, he will be pleased to hand it over. Please send it. You signed the contract as Secretary and the order as Treasurer; find it enclosed, I shall wait for it."

On the same date, Hazen wrote to the plaintiff: " I have your telegram that the trust company will not release the papers without recorded vote of the directors and certificate of same. . . . There will be a directors' meeting in New York next week, which is the earliest we can do anything in that line."

On October 10, the plaintiff wrote to Hazen : " Your letter of 8th at hand, in which you formally close all business matters between us, as per agreement."

On the same date Hazen wrote to the plaintiff: " I am sorry the trust company will not let you have the packages. Enclosed find another request, and a letter which you can show them. I leave town to-night, and if you have anything further to write, please write to Col. Wm. P. Fairbanks, Murray Hill Hotel, New York, to whom I have written in full, sending him our copy of the trust company contract, and at the directors' meeting next week in New York he will have the proper vote taken, and will send certified copy to you as Secretary *pro tem.*, which will cover the point. This is the best we can do in the matter. Please send the cancelled contract here, as you have already received our copy." William P. Fairbanks was a director in the defendant corporation.

The letter enclosed was as follows : " St. Johnsbury, Vt., October 10, 1888. New England Trust Co., Boston, Mass. Gentlemen, — Reference to a certain memorandum executed by the Standard Electric Company of Vermont, Thomas Pray, Jr., and New England Trust Co., under date March 30, 1888, please note clause reading as follows: 'Said envelope may be withdrawn and said care and keeping shall cease upon the writ-

ten request to said Trust Company of said Electric Company and said Pray.' In accordance therewith, we hereby request that said envelopes may be withdrawn by said Thomas Pray, Jr., at his request and pleasure, and said memorandum considered cancelled. In witness whereof, we hereby affix the signatures of President, Vice-President, and Secretary and Treasurer of said Standard Electric Company of Vermont. Franklin Fairbanks, President. E. R. Whitney, Vice-President. P. F. Hazen, Secretary and Treasurer."

On October 11, the plaintiff wrote to William P. Fairbanks as follows: " Mr. Hazen asks me to write you as to New England Trust Company. The company required corporate action by the directors, and then a certificate from the record of secretary of the company, with the company's corporate seal. Enclosed find same, drawn by legal talent. I also wish corporate action as a final and legal cancellation of my contract, the New England Trust matter being consummated, and enclose the proper form for same. These must both come from the home of the company, and under corporate seal and secretary's certificate that they are from the books of record of the company by official corporate action, and under seal of company and over secretary's signature. I must wait here until this is done, and will then forward my contract promptly."

The forms of votes referred to were as follows:

"Voted, That the New England Trust Company of Boston, Mass., is hereby requested by the Standard Electric Company of Vermont to deliver to Thomas Pray, Jr., of said Boston, any and all envelopes, papers, or property whatsoever mentioned or referred to in, or deposited under, a certain agreement, dated March 30, A. D. 1888, and executed in triplicate by and between said New England Trust Company, the said Pray, and the said Standard Electric Company, and that the said Pray's receipt and acknowledgment thereof shall be a full and final release of said New England Trust Company from the said Standard Electric Company under the said agreement."

"Voted, That, in pursuance of the letter of September 26, 1888, to Thomas Pray, Jr., of Boston, Mass., by the Standard Electric Company of Vermont, the said Standard Electric Company does now cancel its agreement made with the said Pray, and executed in duplicate January 3, 1888, and does hereby

release and discharge him from any and all claims or demands whatsoever which may have arisen, or hereafter otherwise might arise, under or by virtue of said agreement; hereby ratifying and confirming the action of P. F. Hazen, treasurer, in cancelling the said agreement, as per his official letter to said Pray, dated October 8, 1888."

On October 24, the plaintiff wrote to Franklin Fairbanks, President of the defendant corporation, as follows: "I am not complaining, but I do wish to be set at liberty, and hope you will give it personal attention, or send me my salary if I am to be kept sitting here."

On October 25, William P. Fairbanks wrote to the plaintiff: "There has not been a chance yet to get a quorum of the directors of the Electric Company together, to act on your matters. . . . . I send the papers you sent me back to Mr. Hazen, who will probably be at St. Johnsbury before I shall return here, and it may be a meeting of the board can be had before I should get back."

On October 27, the plaintiff wrote to Franklin Fairbanks, enclosing a copy of the foregoing: "This simply delays matters to an indefinite date. . . . My verbal understanding with your Mr. Hazen was clear, as his letter to me of September 26th proves. I was to be set at liberty, and possessed of the deposit at New England Trust Company. This has not been done. I now ask you to forward my salary, as per contract, from September 29th to date, and for such further period as you delay the corporate execution of the release. In order to save all further expense, please convene the directors and take corporate action."

On the same date, Franklin Fairbanks wrote to the plaintiff: "I supposed the meeting of directors to authorize release of your contract was held last week in New York, as all necessary papers were taken by Mr. Whitney to New York for that purpose. He is to return from New York to-day, and as soon as I see him I will ask him about it and report."

On October 29, the defendant wrote to the plaintiff: "Col. Franklin Fairbanks wishes us to acknowledge receipt of your favor of 27th inst. He does not understand why you cannot obtain possession of the documents on presenting the letter which you have signed by the president, vice-president, secretary, and treasurer," explaining the delay in taking corporate action.

On October 30, the plaintiff wrote to Franklin Fairbanks: "Yours of 27th at hand; you will have received my letter to you of the 27th, carrying copy of Col. W. P. Fairbanks's letter to me, which is full proof that no action was up to that time taken for the release of my contract. Pending this action by your company in corporate form, I am still tied up here. . . . I am in receipt of a letter from Standard Electric Company, by your direction under date October 29. . . . I must respectfully decline to consider the carrying out of the formal acceptance of our verbal agreement (Mr. Hazen and mine) to separate, as an accommodation, but as a matter of business (please refer to his letter to me of Sept. 26th) which has not yet been consummated. This lack of consummation has prevented, and still prevents, my making any business engagements, several of which are offering, as I am still bound as an employee of the Standard Electric Company of Vermont, by a contract then and now uncancelled by any corporate action; and my demand on you for my salary until cancellation by corporate action is simply a matter of business, for which I am not in any way responsible, and assure you that I do not wish this state of affairs to continue."

On November 6, Hazen wrote to the plaintiff as follows: "We have called a meeting of the directors for Friday of this week, at which time we expect to get a quorum together. . . . Our opinion is that we have already given all the release the law requires, but of course are very glad ·to take any further action as soon as we can get a quorum together."

On November 7, the plaintiff wrote to Hazen as follows: "As to the corporate action and question arising on the deposit, I can only refer you to my letters to your president under dates of Oct. 27th and 30th, and say that I am still waiting here for the corporate release and repossession of deposit." And on November 13, as follows: "I want to close this business up this week and be at liberty, if your company can act so to release me."

On October 8, the defendant sent the plaintiff its copy of the contract in suit, with holes punched through the signatures and seals, and indorsed, "Cancelled October 8, 1888, by mutual consent between the parties hereto," this having been done by Hazen as treasurer of the defendant company, or by his clerk under his direction. No vote of the directors of the defendant corporation had been taken at this time authorizing any cancel-

lation, and the only vote of the directors upon the subject is that of November 9 following.

When the plaintiff received the defendant's copy of the contract so punched and marked, he wrote across the face of his own copy of the contract the words, " Cancelled October 8, 1888, by mutual consent of both parties," and cancelled the signatures of said contract by crossing them over with ink, but did not deliver his copy so marked to the defendant or to any of its officers, nor did he notify the defendant or any of its officers that he made such memorandum on his copy or erased the signatures; and there was no evidence that any officer of the defendant corporation knew of the existence of such memorandum or erasure until the plaintiff delivered his copy of the contract to Hazen, on November 14 following. On November 9, the directors of the defendant corporation held a meeting and passed a vote in the form requested by the plaintiff in his letter of October 11 to William P. Fairbanks. On November 14, the plaintiff and Hazen met in Boston, and the plaintiff made a further indorsement on his copy of the contract as follows: " Cancelled Nov. 14, 1888, by corporate vote of Standard Electric Company of Vermont, of November 9th, 1888." He also, on the same day, executed the following release, and attached it to said agreement, and delivered the same to Hazen, for the defendant: " Know all men by these presents, that I, Thomas Pray, Jr., of Boston, in consideration of one dollar to me in hand well and truly paid by the Standard Electric Company of Vermont, the receipt whereof I do hereby acknowledge, do hereby consent and agree to the cancellation of a certain contract made and executed by the said Standard Electric Company and myself, a duplicate original copy whereof is hereunto annexed, dated January 3, A. D. 1888, the said cancellation having been voted by the board of directors of said company, November 9, 1888; and for the consideration aforesaid I do likewise, for myself and my executors and administrators, release and discharge the said company and its successors from any and all claim or demand I now have, or ever had, against it or them by reason of the said contract or otherwise, excepting only a claim against said company for my salary under the said contract from September 29, 1888, to this date, and excepting likewise a claim of . . . ; and it is expressly understood that the said claims for salary and for said . . . are

wholly excepted from, and are in no manner affected by, this deed of release." Hazen attached to the defendant's copy of said agreement, which had already been delivered to the plaintiff, a certified copy of the vote of November 9, and delivered the same to the plaintiff.

The other form of vote, enclosed in said letter of October 11, was also passed by said board of directors on November 9, and a certified copy thereof furnished to the New England Trust Company on November 14, and thereupon said company delivered up to the plaintiff the packages and documents referred to in said agreement of January 3, 1888, and in the triplicate agreement of March 30, 1888.

It appeared that nothing had been paid to the plaintiff by the defendant for the period between September 29 and November 14, except as appears in the above evidence.

On the foregoing evidence, the plaintiff requested the judge to rule as follows:

" 1. On the undisputed testimony in the case, there was no cancellation of the indenture of January 3, 1888, until November 14, 1889.

" 2. Said indenture was not and could not be cancelled except by the mutual and united action of both parties to it, previous to the expiration of its term.

" 3. Unless the court shall find as a fact that the words, ' Cancelled October 8, 1888, by mutual agreement between parties hereto,' ' Cancelled October 8, by mutual consent between parties hereto,' wherever written on the indenture, were fully and unconditionally assented to by the plaintiff, then, as matter of law, they are void and meaningless, and do not affect the parties in any manner, and the indenture remained in full force and effect.

" 4. The authority of Mr. Hazen, the treasurer, to cancel the indenture on the part of the defendant, will not be presumed, but must be shown to have been authorized by (a vote of the directors of) the defendant corporation.

" 5. The only corporate action of the defendant corporation, whereby it acted lawfully and efficiently in any attempt to cancel the indenture, was by vote of its directors, November 9, 1888, and such action only became finally effectual by acceptance by the plaintiff, November 14, 1888.

" 6. The true construction of the vote of November 9, 1888, is that the ' Standard Electric Company of Vermont does now cancel its agreement,' — that is, on the date of said vote; and not till such cancellation was assented to by the plaintiff by his release of November 14, 1888, in which he said, 'I . . . do hereby consent and agree to the cancellation,' was such cancellation completed, and then only to the extent stated in said release.

" 7. By the receipt and acceptance of the plaintiff's release of November 14, 1888, the defendant corporation is conclusively presumed to have assented and agreed to its terms and conditions, and that the plaintiff's salary had not been paid, or settled, or compromised, up to that time.

" 8. Unless the court shall find, by a preponderance of evidence, that the plaintiff waived his claim for salary provided for in the indenture, or that the defendant alleges and proves that the plaintiff did not, or was not ready to perform his part of the indenture, then the plaintiff will be entitled to a verdict."

The judge gave the second and eighth rulings requested, and the fourth, omitting the words in parentheses, and declined to give the others, but found and ruled as follows :

" Upon the evidence in this case, I find that the offer of the plaintiff to terminate the contract of January 3, 1888, made by the plaintiff to the treasurer of the defendant corporation on or about September 13, 1888, was accepted by the corporation, and that the defendant paid to the plaintiff the money, and did the other acts which by the terms of said offer it was required to do, as the consideration for the consent of the plaintiff to the termination of the contract of January 3, and that by reason of said offer, acceptance, and acts of the parties, said contract was terminated, and that the plaintiff cannot therefore maintain this action ; and I rule that there is competent evidence in the case to support the foregoing findings of fact."

The judge found for the defendant; and the plaintiff alleged exceptions.

*S. H. Dudley,* for the plaintiff.

*C. M. Barnes,* for the defendant.

ALLEN, J. The evidence well warranted a finding that the defendant authorized the written request to the New England Trust Company to allow the plaintiff to withdraw the envelopes;

so that, if the trust company had seen fit to accept and act upon that request, it would have been protected in so doing. The act was not one which, in its nature, required a formal vote of the directors. The contract of March 30, 1888, under which the envelopes were deposited with the trust company, did not call for such formal vote; nor did the plaintiff stipulate for one. In the agreement for the cancellation of the original contract between himself and the defendant, he only stipulated for a written request which should be in fact the request of the defendant. This request, according to the finding of the court, the plaintiff had.

Moreover, the plaintiff accepted and kept the bonus of four hundred dollars paid to him by the defendant, as a part of the consideration for having the original contract cancelled. By keeping that money, he elected to treat the contract as cancelled. He cannot now be heard to say the promise therein contained to pay him a salary continued in force, since he kept the money which the defendant paid to him in order to obtain a release from that promise. *Alden* v. *Thurber*, 149 Mass. 271.

Without dwelling on other aspects of the case, it seems to us very clear that the finding of the court was warranted.

The fact that the defendant was willing to do everything it could afterwards to meet the wishes or requirements of the trust company, as well as the later requests of the plaintiff himself, does not weaken its legal position.

*Exceptions overruled.*