## ALBERT M. MURPHY v. FRANK S. McGRAW.

*Sale—Warranty—Right of return—Failure of consideration—Pleading—Common counts.*

1. A special count in *assumpsit* for a breach of warranty on the sale of a horse, and a second count for the recovery of money paid without consideration, setting up the circumstances under which it was obtained, and that the horse purchased was absolutely without value, are not inconsistent, and the plaintiff cannot be compelled to elect upon which he will proceed.

2. In such a case the question whether, upon a breach of the warranty, a right existed to return the property, is one of law, and an allegation of an *offer* to return, if unaccepted, and it is found that the right did not exist, may be treated as surplusage, leaving the special counts the same as if the allegation had been omitted.    *Manufacturing Co. v. Vroman*, 35 Mich. 325.

3. Money paid without consideration may be recovered under the common counts in *assumpsit*.    *Beardslee v. Horton*, 3 Mich. 560; *Phippen v. Morehouse*, 50 Id. 537; *Petersen v. Lumber Co.*, 51 Id. 86; *Lane v. Boom Co.*, 62 Id. 63; *Nugent v. Teachout*, 67 Id. 571.

4. While it may be considered as well settled as a *general* proposition that when there is a warranty as to *quality* on the sale of goods, but no fraud, and no stipulation that the goods may be

returned, though the warranty be broken, the vendee cannot rescind the contract without the consent of the vendor, yet there may be cases where the purchaser, without such return, may yet be allowed to recover the cost of the goods.

So *held*, where a horse purchased under a warranty that he was sound, and just the kind of an animal the purchaser wanted for a *driving* horse, proved to have an incurable disease of the feet which rendered him worthless for the purpose named.

5. A vendee of a horse, warranted as sound, may recover, in a suit for a breach of the warranty, under the common counts in *assumpsit*, amplified by a bill of particulars, for the keeping and medical treatment of the animal, upon proof that he notified the vendor of the unsoundness, and was led by his statements to make such expenditures, or, if not so encouraged, if the jury find that the circumstances were such as rendered it reasonable for him to make the same; but he cannot recover for any expenditures made after he ought, as a man of reasonable judgment and prudence, to have become satisfied that the horse was worthless and the disease incurable.

Error to Bay. (Cobb, J.) Argued February 8, 1889. Decided February 20, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Simonson, Gillett & Courtright,* for appellant.

*T. A. E. & J. C. Weadock,* for plaintiff.

LONG, J. This action is brought to recover money paid by plaintiff to defendant for a horse, and money expended by plaintiff in attempting to cure the horse of disease. Plaintiff had a verdict and judgment in the court below for $601.50. Defendant brings error.

The declaration is upon the common counts in *assumpsit,* to which are added two special counts, setting out the purchase and sale of the horse under a warranty that he was sound, straight, and all right, and just such a horse as plaintiff wanted, and met all the requirements stated by plaintiff to defendant prior to the purchase,

alleging a breach of the warranty, and that the horse was of no value whatever at the time of the purchase.

In the first special count plaintiff alleges that on March 10, 1887, defendant sold him a horse for $400, and promised that the horse was sound and without a blemish, and under 6 years of age, and further promised that if the horse should prove unsound defendant would, on the the return of the same, repay the purchase price; and that the horse was 12 years old and was unsound and blemished; and on November 19, 1887, he returned the horse to defendant, who received the same, and hath wholly refused to repay said sum of money.

The second special count is as follows:

"And also for that, whereas, on or before March 10, 1887, the said defendant was the owner and in possession of a certain horse which he was offering for sale, and one A. T. Miller was an employé of said defendant for hire, and was then and there in charge of defendant's stables and of said horse, as such employé, and said plaintiff, being desirous of purchasing a sound, speedy, and healthy horse for his own use, the said defendant represented said horse to be such an one as above described, and such as plaintiff desired to purchase. Said plaintiff, when examining said horse, noticed some slight marks and abrasions of the skin on said horse's legs and feet, upon which some medicine had been used, and, on calling the attention of said defendant to the same, he was assured by said defendant and said Miller, in the presence and hearing of said defendant, that said abrasions and marks were caused by a slight attack of scratches, a common and comparatively harmless complaint; and said plaintiff, relying on said assurances so given by said defendant, thereupon bought said horse, and paid to said defendant the sum of four hundred dollars in lawful money for said horse, which sum would be his value if he was sound and such a horse as defendant represented him to be.

"After said plaintiff took possession of said horse, said malady became very much worse, notwithstanding the fact that said horse received the best possible care and medical treatment; and what was represented by said defendant and said Miller, his employé as aforesaid, to be a tempo-

rary and harmless blemish, was really, at the time said horse was sold to plaintiff, and for months prior thereto had been, and still is, a loathsome, incurable, and serious disease of the skin, rendering said horse worthless, all of which the said defendant, before and at the time he sold said horse to plaintiff, well knew; whereupon said plaintiff informed said defendant of the condition of said horse, on or about March 15, 1887, and kept him informed from time to time of the aforesaid condition of said horse, and said defendant, when so informed of the disease, blemish, and unsoundness aforesaid, still claimed that said disease was curable, and requested plaintiff to continue having said horse treated medically, which said plaintiff then and there did, notwithstanding which care and medical treatment said horse did not improve or recover from said disease, and plaintiff, on or about November 19, 1887, returned said horse in the same condition in which he received him to said defendant," etc.

This count then alleges a promise to repay the money so paid for said horse, and a refusal to repay the same.

Plaintiff also filed a bill of particulars in the case under the common counts, as follows:

To cash received by defendant for the use of plaintiff _____$400 00
Interest on the same_____ 28 00
Cash expended for medicine, care, and maintenance
 of the horse from March 10 to November 19, 1887_ 300 00
Cash paid for freight for conveying said horse from
 Bay City to Detroit, and from Detroit to Bay
 City _____ 50 00
                                                        _____
   Total_____$778 00

The plea is the general issue.

After the jury were sworn in the case, defendant's counsel objected to the introduction of any testimony, on the grounds:

1. That the declaration did not state a cause of action.
2. That the second count, being a count in tort, cannot be joined with the first count, which is a count in *assumpsit,* and that the plaintiff should elect upon which count he will proceed.

74 Mich—21.

3. That the two counts, if they are in *assumpsit,* are inconsistent with each other, and the plaintiff should elect upon which he will proceed; the first being on express contract, and the second on an implied one.

The court very properly overruled these objections. These counts are in *assumpsit* to recover back the money which plaintiff claims defendant obtained from him without consideration, by the sale of a horse which plaintiff contends was wholly worthless, and which he purchased upon the warranty of defendant that it was sound, straight, and all right, and just such a horse as plaintiff wanted. The first special count alleges the warranty, and its breach. The second special count alleges the warranty, and sets out with much particularity the condition of the horse at the time of the purchase; the representations then made by the defendant and his employé as to the condition of the horse, and assurances that the marks or abrasions were scratches, a common and comparatively harmless complaint; the reliance of the plaintiff upon these representations; and the fact that with the best care and medical treatment what was represented to be scratches proved to be, and is, a loathsome and incurable disease, rendering the horse worthless.

These two counts in the declaration each state a cause of action, and are not inconsistent, and the court very properly refused to compel the plaintiff to elect under which he would proceed. The first count is in *assumpsit* for a breach of the warranty in the sale. The second is in *assumpsit* for the recovery of money paid without consideration; setting up the circumstances under which it was obtained, and that the horse purchased was absolutely without value.

The question whether, upon a breach of the warranty, a right existed to return the property, is one of law;

and, as there was no acceptance of the return, if that right did not exist, then the averment of return offered was surplusage, and left the special counts as if it had been omitted, and the claim of too much would not vitiate the rest. *Kimball, etc., Manufacturing Co. v. Vroman,* 35 Mich. 325.

Even if these special counts had not been added, under the circumstances shown upon the trial and claim made the plaintiff might have recovered under the common counts alone. If, as it is claimed by the plaintiff, the horse was of no value whatever, then the defendant had obtained $400 of plaintiff's money without consideration, which, in equity and good conscience, he ought to repay; and in the language of Lord Ellenborough in *Hudson v. Robinson,* 4 Maule & S. 475, 478:

"An action for money had and received is maintainable whenever the money of one man has without consideration got into the pocket of another."

And, whether the recovery was asked on the special or general counts, the same facts had to be relied on by the plaintiff, and the same defense made. Under this theory of the case the plaintiff could only recover upon the ground that the money was paid without consideration, and a recovery in such a case may be had on the common counts in *assumpsit.* *Beardslee v. Horton,* 3 Mich. 560; *Petersen v. Lumber Co.,* 51 Id. 86 (16 N. W. Rep. 243); *Phippen v. Morehouse,* 50 Id. 537 (15 N. W. Rep. 895); *Lockwood v. Kelsea,* 41 N. H. 185; *Grannis v. Hooker,* 29 Wis. 65; *Lane v. Boom Co.,* 62 Mich. 63 (28 N. W. Rep. 786); *Nugent v. Teachout,* 67 Id. 571 (35 N. W. Rep. 254).

Counsel for defendant have devoted much space in their brief to the consideration of the question that when there is a warranty as to quality on the sale of goods, but no fraud, and no stipulation that the goods may be returned, though the warranty be broken the vendee can-

not rescind the contract without the consent of the
vendor; that a breach of warranty alone will not justify
a return.    This may be conceded as well settled as a
general proposition, but there may be cases where a pur-
chaser, without returning an article, may yet be allowed
to recover its cost.    The declaration alleges ·that the
defendant represented the horse as sound, straight, and
all right, just such a horse as the plaintiff wanted.
These representations amounted to a warranty.    The
claim made on the trial by the plaintiff was that about
March 1, 1887, he went to the farm where the horse was
kept, with the defendant, and told him what kind of a
horse he wanted; that he wanted a good, prompt, driving
horse,—one that would go,—when defendant said he had
one that would fill the bill.    The defendant, showing the
horse in question to the plaintiff, said it was six years
old, and was straight, and all right.    The farm was some
three miles out from the city of Bay City.    The horse
was in the charge of Mr. Miller, who hitched him up,
and plaintiff, defendant, and Miller got in, and, Miller
driving, the parties came to the Fraser House, in the
city, and, as plaintiff says, "We came down to the
Fraser House about as fast I ever drove in my life."
Arriving at the Fraser House, plaintiff told the defend-
ant he would take the horse at the price, $400.    The
horse was taken by Miller back to the farm, when, in
about two weeks thereafter, plaintiff came again to Bay
City, went out to the farm, met defendant there, and, in
looking the horse over, found his heels were sore.    Upon
calling defendant's and Miller's attention to this, they
both said it was nothing but the scratches, and it would
be all right in a little while, that they had been blister-
ing his heels.    Plaintiff said, "What shall I do?"    Mil-
ler, in presence of defendant, said, "Do nothing; they
will come out all right."    Instead of the feet being sore

in the cracks, where scratches would come, they were sore all over the foot, and covered with white matter on top of the hoof, on the back side of the heels, and on the ankle joint.    Plaintiff says:

"I took the horse then, and paid the $400, because I relied a good deal on McGraw's sayings and judgment as to what the disease was."

The horse was taken to Detroit on March 15, 1887, and, as plaintiff claims, had the best of care, and was treated for scratches, and was driven but very little. About April 1, plaintiff employed a veterinary surgeon, who treated him until August.   This surgeon pronounced the disease eczema.   About ten days after the horse was taken to Detroit, plaintiff met defendant at Bay City, and informed him of the condition of the horse, and that he could do nothing with him.   Defendant then went to a horseman, purchased a box of medicine, and told plaintiff it would cure him.   Plaintiff upon this occasion told defendant that the veterinary surgeon called the disease "eczema."   Defendant said, "Pshaw, it is nothing but the scratches."   It appears that plaintiff continued to treat the horse up to November 19, 1887, when he returned him to defendant, who refused to receive him; when he was sent to a boarding stable, and in a few weeks after put up and sold for his keeping, and purchased at the sale for about $40.

Some considerable testimony was given on the trial, showing the condition of the horse, and that he was afflicted with chronic eczema; the claim of plaintiff being that he was so afflicted at the time of the sale, and that he kept him, and attempted the cure, in reliance upon the assurances of defendant that it was nothing more than scratches; and that by reason of this he was not only entitled to recover the purchase price and interest, but also the amount expended in care and medicine and

medical treatment, as well as the cost of transportation from Bay City to Detroit and return to Bay City. This last item of costs of return to Bay City the court instructed the jury the plaintiff could not recover, so that item is out of the case. No claim was made on the trial that there was an agreement made on the sale that the plaintiff might return the horse if it should prove unsound, and receive back the purchase price, and no claim was made that there was an acceptance of the horse when return was made, but it appears that no such agreement or understanding was had, and that defendant refused to accept the horse when returned. The whole case proceeded upon the theory that the warranty was made of a sound horse, which, at the time of the purchase, was not only unsound, but was wholly worthless by reason of being afflicted with a dangerous and contagious disease called "eczema," and that therefore the money paid was without consideration, and might be recovered back together with interest. We think the proofs tend to show these facts, and that this part of the case was very fairly submitted to the jury, under the charge of the court.

Defendant's counsel contend that, however this might be, there is no allegation in the declaration under which the costs of transportation, keeping, and medicines and medical attendance can be recovered, and that the plaintiff kept the horse an unreasonable length of time before offering him back, as there was nothing in the defendant's conduct or statements justifying the plaintiff in keeping the horse as long as he did. Counsel cite *Hubbardston Lumber Co. v. Bates*, 31 Mich. 158, in support of this proposition. We think these items, under proper proofs, could be recovered under the declaration as framed. To the two special counts were added the common counts in *assumpsit*, and under these common counts the

plaintiff filed a bill of particulars setting out these items, and claiming a recovery thereon. This is a very different case from the one cited by counsel. It is claimed here that the plaintiff notified the defendant some ten days after the purchase as to the condition the horse was in; that he saw him several times afterwards, and each time defendant insisted the horse would come out all right, and at one time gave plaintiff medicine to use. Upon this part of the case the court stated to the jury:

"Now, if he was led by Mr. McGraw to believe he ought to keep on trying, he was perfectly justified in trying, and the expense of it would be chargeable to McGraw; or, even without any encouragement on the part of McGraw, if there were any such circumstances about it as in your judgment rendered it reasonable that he should keep on trying as long as he did, then he was justified in doing it, and the expense of keeping the horse while he was doing it is chargeable to McGraw. But if it should turn out that early in the season, soon after he got the horse, he found out so much about it as ought to satisfy any man of reasonable judgment and prudence that the horse was then good for nothing, and if he was not led along by any of the statements that McGraw was making to him from time to time, then the expense of his keep and of doctoring him stopped at such a time as you in your judgment shall determine to be reasonable."

Under the claim made by the plaintiff, which his proofs tended to support, we think this was a proper charge, and fairly submitted to the jury the questions raised.

Twenty-two errors are assigned. Several of these assignments of error relate to the refusal of the court to charge the jury as requested by the defendant. We have examined them, and are of opinion that those which the court should have given as stating the law correctly are covered by the general charge. Several of the requests of counsel for defendant were properly refused by the court. They are based upon the proposition that, inasmuch as the

plaintiff made no proof that it was agreed that plaintiff might return the horse if he proved unsound, therefore he had no legal right to return it, and he must stand by his bargain, and his only remedy would be for damages for breach of warranty; that he could not return the property and sue for the consideration. From the view we take of the case, and what we have already said, these questions need not now be discussed, as the court was not in error in refusing these requests.

Several assignments of error relate to the rulings of the court in allowing certain testimony to be given by the plaintiff. We do not think it would be profitable to go over the testimony given on the trial, and point out these objections, and give our reasons why this testimony is competent, and was properly admitted by the court. It is a somewhat peculiar case in some of its features. Counsel upon either side seem to have had widely varying opinions as to just what the declaration alleged, and whether it was in affirmance or rescission of the contract of sale, what testimony was admissible under it, and the measure of plaintiff's damages under the case made by it. We think the case fairly tried, and fairly submitted to the jury by the charge as given.

The judgment of the court below must be affirmed, with costs.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. SHERWOOD, C. J., did not sit.