OAKLEY W. ALDEN *vs.* HORACE K. THURBER & others.

Suffolk.    March 20, 1889. — May 11, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Contract of Sale — Offer of Compromise — Mutual Rescission — Waiver*
*of Breach — Accord and Satisfaction.*

A firm agreed to sell pure raspberry jam to a customer, who upon its being sent to
him remitted to the firm a part of the agreed price. After receiving the jam,
he found and claimed that it was not pure jam within the meaning of the con-
tract, upon which the firm wrote to him expressing its regret at his dissatisfac-
tion, and adding that it was " willing to receive the whole lot back and credit it
up to you, together with all freight charges, and in this way settle the matter,
as we do not care to lose your trade. . . . Advise us when and how you ship
the jam." The customer thereupon sent back the jam, except a small portion
sold by him, requesting the firm to " remit our money at once," whereupon the
firm credited him with the jam returned, and with freight and cartage, and re-
mitted to him the balance due him. *Held,* that there was a mutual rescission of
the contract, and a waiver and an accord and satisfaction of any prior breach
thereof.

CONTRACT.    The declaration was in three counts, the first of
which was for the breach of an agreement by the defendants to
sell to the plaintiff pure raspberry jam, and the second and third
counts for a balance of an account between the parties alleged
to be due the plaintiff.    Trial in the Superior Court, before
*Lathrop,* J., who reported the case for the determination of this
court, the report so far as material being as follows.

The following facts appeared in evidence.    The plaintiff, a
grocer and dealer in jams in Boston, on August 25, 1882, gave
an order to the defendants, who were grocers and manufacturers
of jams in New York, for raspberry jam, receiving from the de-
fendants at the time the following, signed by them: " Memoran-
dum. . . . Abt 10,000 lbs. raspberry jam, 11 cts., pure," the
word " pure " being underscored.    No time for delivery was ex-
pressly agreed upon in the contract.    The plaintiff, after some
correspondence with the defendants respecting the credit to be
given him, on August 31, 1882, wrote to them : " Enclosed find
check for ($1000) one thousand dollars, to be applied in pay-
ment for ten thousand pounds pure raspberry jam, ordered
August 25."

Between September 5 and October 6, 1882, the parties had some correspondence as to the quality of various samples of jam submitted to the plaintiff in half-barrels and gallon cans, and on the latter date the plaintiff wrote to the defendants: " We expect you to ship us without delay ten thousand pounds pure raspberry jam, as per agreement. If sample sent in gallon cans is a pure article, and the berries sound, we would like goods at once. We think we have serious grounds for complaint in the way we have been delayed and bothered, being unable to fill orders." On October 9 the defendants wrote they would ship twenty-five kegs of about one hundred and twenty pounds each that week, and balance of ten thousand pounds within ten days after hearing from the plaintiff that the quality of that shipment was satisfactory ; and at intervals between October 13 and November 21, 1882, shipped to him, in four lots, ten thousand one hundred and forty-five pounds of jam. After the first shipment was received by the plaintiff, without an examination of the same, having an order for jam, he sold one keg from that shipment.

Before December 14, 1882, the defendants drew a sight draft on the plaintiff for $114.20, which was returned with the indorsement, " Goods not what was ordered, — will write"; and on that date, and again on December 27, 1882, the defendants wrote, expressing their surprise at the return of the draft, and said they had not received any letter of explanation, and asking for an explanation at once. On December 30, 1882, the plaintiff replied: " I have waited for your final shipment to have different shipments for comparison with sample of Thurber's best goods, sent in gallon cans to represent what was to follow. I have submitted same to experts, who pronounce it totally and altogether inferior to gallon cans. . . . We have entire amount of jam, except one keg sold, and would be pleased to return goods and recover money." On January 5, 1883, the defendants wrote : " Unless you at once remit check to cover past due balance of account, $303.38, we shall place it in the hands of our attorney for collection." On January 13, 1883, the plaintiff wrote, re ferring to a letter received from the defendants' attorney, say ing that the jam sent was not what he ordered, and proved to be a very inferior and unsalable article; that he held it subject to the defendants' order and risk; and refused to receive

it, and asked what disposition the defendants desired to make of the goods; adding, " I also notify you that I shall hold you responsible for the damage and loss I have suffered by your breach of the contract." On January 22, 1883, the defendants replied: " I regret very much your dissatisfaction about that lot of raspberry jam. Having seen the attorney's letter, I spoke to Mr. H. K. Thurber about it, and after discussing the matter he desires me to say, that, notwithstanding the fact that Mr. Chase insists that the goods were like the sample, he is willing to receive the whole lot back and credit it up to you, together with all freight charges, and in this way settle the matter, as we do not care to lose your trade, and we always desire to give our customers satisfaction. Advise us when and how you ship the jam." This letter was signed by one Wallis, a salesman, who, it was admitted, was duly authorized. After this letter was received by the plaintiff, he had samples of the goods taken from each of the shipments and put into small glass jars, for the purpose of using the same as evidence of the article received by him in any subsequent action against the defendants for damages, and shipped back all the rest, except the keg sold on October 30, 1882, sending to the defendants, on January 25, 1883, these statements, with amounts paid for freight and cartage: " We send this day, per Metropolitan S. S. Line (93) ninety-three kegs mdse," and " Received 94 kegs, $102.59; returned 93 kegs, sold 1 keg." No signature was attached to either statement, but they were written on letter-heads of the plaintiff.

On February 2, 1883, the defendants wrote: " We send you by express to-day a sample of the raspberry jam which we took out of the first keg we opened. I want you personally to examine it, and tell me frankly if you can find any just cause for complaint. As I told you before, we always desire to please our customers, and for that reason we receive it back, and credit it up to you; but we really do not see in what respect the jam was wrong." To this the plaintiff replied, on February 6, 1883: " Yours of February 2d received, and contents noted. . . . Remit our money at once and oblige." On February 8, 1883, the defendants wrote: " As requested by yours of the 6th inst., we beg to enclose our check for $837.86, amount to your credit, which please acknowledge." No further correspondence passed

between the parties. The plaintiff had purchased teas of the defendants in September and October, 1882, and this sum was the amount of a balance remaining after deducting from the $1,000 the bills for such teas, a discount on account, and freight and cartage. No interest on the use of the $1,000 was included in the sum forwarded.

The plaintiff testified that, by reason of the failure to receive the jam ordered, he was without raspberry jam, was unable to fill his orders, and thereby suffered damage. He also offered to prove by expert testimony that the alleged jam sent by the defendants was not raspberry jam at all, but an entirely different article, not salable as raspberry jam, or suitable to use in this market, or of any value.

The judge being of the opinion, on the foregoing evidence and offer of proof, that the action for damages on the first count could not be maintained, ordered a verdict for the defendants on that count, a verdict being returned for the plaintiff on the second and third counts as agreed by the parties; and reported the case for the determination of this court. If the plaintiff was entitled to maintain the action on the first count, a new trial was to be ordered; otherwise, judgment was to be entered on the verdict.

*E. Avery & C. Q. Tirrell,* for the plaintiff.

*A. Hemenway,* for the defendants.

MORTON, C. J. The defendants agreed to sell to the plaintiff about ten thousand pounds of pure raspberry jam. They sent the jam to the plaintiff at Boston, and he remitted to them one thousand dollars in part payment of the agreed price. After the receipt of the jam, the plaintiff found and claimed that it was not pure raspberry jam, such as the contract called for. Some correspondence ensued between the parties, and on January 22, 1883, the defendants wrote to the plaintiff as follows: " I regret very much your dissatisfaction about that lot of raspberry jam. Having seen the attorney's letter, I spoke to Mr. H. K. Thurber about it, and, after discussing the matter, he desires me to say, that, notwithstanding the fact that Mr. Chase insists that the goods were like the sample, he is willing to receive the whole lot back and credit it up to you, together with all freight charges, and in this way settle the matter, as we do not care

to lose your trade, and we always desire to give our customers satisfaction.   Advise us when and how you ship the jam."   Upon the receipt of this letter, the plaintiff sent back the jam, except one keg which had been sold, and requested the defendants to " remit our money at once."   The defendants thereupon credited the plaintiff with the jam returned, and the expenses of freight and cartage, and remitted to the plaintiff the balance of the $1,000 due him.

This was a mutual rescission of the contract.   The letter of the defendants was an offer to settle and compromise the controversy between the parties.   The acts and conduct of the plaintiff were an acceptance of that offer.   This was a waiver of the right to sue for any preceding breach of the contract.   The performance by the defendants of the new agreement operated as an accord and satisfaction for any breach, and discharged the old contract.   Such was clearly the intention of the defendants, and as the plaintiff accepted their offer unconditionally, and thus induced them to perform it, he cannot now say that he had a concealed intention not to discharge the prior breaches of the contract.   This would be bad faith.   *Rogers* v. *Rogers*, 139 Mass. 440.

For these reasons, we are of opinion that the Superior Court rightly directed a verdict for the defendants on the first count.

*Judgment on the verdict.*