# W. H. Coyle and H. S. Smith v. Joe Baum.

1. Contract—*Rescission—Resale— Breach of Implied Warranty.*
Baum purchased from Coyle & Smith oats to be fed to his livery
horses, paid the purchase price and received the oats. This con-
stituted an executed contract, and the ownership of the oats passed.
After using a portion of the oats Baum discovered that they were
unfit for feed by reason of having castor beans intermingled with
them, and notified the vendors of such fact. By agreement he
returned the unused portion of the oats and was paid for such
unused portion the same rate per bushel as the original purchase
price. *Held,* That this did not constitute a rescission of the contract,
but was a new agreement by which a resale was made, and the
question as to whether the new agreement amounted to a com-
promise, or accord and satisfaction, of the damages occasioned by
breach of the implied warranty of quality, was a question of fact to
be determined from the agreement itself and the intention of the
parties at the time.

2. Same —*Implied Warranty— Action Will Lie, When.* When a
dealer in feed sells oats to a liveryman for the purpose of being fed to
his livery horses, and such purpose is known to the seller at the time
of sale and the vendee does not examine or inspect the oats, there
is an implied warranty that the oats are reasonably fit for the pur-
pose for which they are intended And if such oats contain castor
beans, a poisonous substance when fed to horses, this constitutes a
breach of the warranty for which an action will lie

3. Actions — *Two Causes Improperly Blended — Harmless Error.*
When a cause of action in tort and one *ex contractu* are improperly
blended in the same petition, and no objection is made to the same
until after plaintiff's proof is introduced, and it appears from the
special findings of fact by the jury, the instructions of the court and
the whole record, that the case was determined upon the theory of a
breach of contract, and the elements of tort did not enter into the
final results, error of the trial court in overruling a motion by de-
fendant to require the plaintiff to elect on which theory he will
stand, is harmless, and a cause will not be reversed for such ruling

4. Damages—*Measure Of.* The measure of damages in an action for
breach of warranty of quality of oats sold for feed for horses, where
the oats contained substances which killed a portion of the horses,
made some sick, and permanently injured others, is the value of the

horses killed, the difference in value of the injured horses before and after the injury, the loss of the use of the horses while sick, the expense of medical treatment and medicine, and such other damages as are the natural and direct consequences of such breach of warranty.

5. WITNESS—*Value of Horses—Market Value Assumed.* Where a witness testifies that he is acquainted with the values of livery horses generally, and that he knew the horses in question, and testified as to their value, it will be assumed that the market value is meant, unless, from the testimony of the witness, it appears that he fixes his values on some other basis.

6. VETERINARY SURGEON—*Opinion of as to Damages.* When a veterinary surgeon has treated certain horses for disease caused by eating castor beans and gives the effect of the poison on the stomach and digestion of the horses, and is acquainted with the general effects of such poison on horses, he may give his opinion as to the permanency of the injury, and where he is acquainted with the general values of such horses may testify as to the damages occasioned by such injuries.

*Error from the District Court of Logan County.*

*Asp, Shartel & Cottingham,* for plaintiff in error.

*Keaton & Cotteral,* for defendant in error.

The opinion of the court was delivered by

BURFORD, J.: This was an action brought by Joe Baum against Coyle & Smith, to recover damage alleged to have resulted to plaintiff's horses by feeding oats containing castor beans, which he had purchased from the defendants. There was a trial by jury and verdict for plaintiff for five hundred and seventy dollars. The jury also returned special findings of fact. Motion for new trial was made and overruled, and judgment rendered on the verdict. The defendants bring the case here upon a petition in error. The amended petition is as follows:

"*Joe Baum, plaintiff v. W. H. Coyle and H. S. Smith, partners as Coyle & Smith, defendants.* Amended Complaint.

"Comes now the plaintiff, Joe Baum, in the above

entitled cause, and, for his amended complaint in this cause against the defendants, W. H. Coyle and H. S. Smith, filed by leave of the court first had, says:

"That the defendants are, and have been for more than one year last passed before the filing of this action on November 5, 1891, partners doing business at Guthrie, Oklahoma Territory, under the firm name of Coyle & Smith. That the defendants have been during said time and were on the —— day of September, A. D. 1891, in the retail grocery and feed business, and engaged in the furnishing of groceries and provisions for domestic consumption, and in the sale and furnishing of hay, oats, corn, chop and other provisions for the feed of horses, cattle and other animals.

"The plaintiff further alleges that ever since the 22d day of April, 1889, he has been and on the —— day of September, 1891, he was engaged in the livery business in the city of Guthrie, Logan county, Oklahoma Territory, and in the business of letting horses, teams and buggies for hire, and for boarding and keeping the horses of any person who might apply, for pay.

"The defendants, Coyle & Smith, at all times herein alleged, well knew that the plaintiff was engaged in said business; that the plaintiff had at divers and sundry times, and frequently during all times, purchased of the said defendants feed, hay, corn and oats for the feed of his horses, and his boarding horses, in his said business; that on the —— day of September, 1891, the plaintiff purchased of said defendants twenty bushels of oats, at the agreed price of thirty-five cents per bushel, for which the plaintiff made payment to the said defendants, and the said defendants agreed to furnish for said money so paid by said plaintiff the said twenty bushels of oats, the said defendants at the time well knowing that the same was for the feed of plaintiff's horses and other horses in his said livery business, and the defendants were bound to furnish to the plaintiff good and wholesome oats for his said feed.

"Plaintiff further alleges that the said defendants, instead of furnishing to the plaintiff the said twenty bushels of good and wholesome oats, furnished to the plaintiff twenty bushels of oats in which castor beans

had been spilled in and among the said oats, through and by the carelessness and neglect of the said defendants and their employes in the handling of said oats and castor beans in their place of business; that the said defendants and their employes, at the time they were sold and delivered to said plaintiff, well knew that the said oats and the said castor beans had been so placed together and intermingled, in their said business, that the said castor beans were liable to be in and were in the said oats, and that they sold said oats to the plaintiff as aforesaid without apprising the plaintiff of the fact that said castor beans had been so handled in said business as that the said beans were in and would be in said oats.

"The plaintiff further alleges that he had no knowledge whatever, at the time of the furnishing of the said oats by the said defendants to the plaintiff, that the said beans were in the said oats, and that he relied upon the said defendants, as he had often done, and as the defendants well knew he was doing, to furnish to the said plaintiff the said oats in a good and wholesome condition and suitable for feed to his said horses and other horses in his said business.

"The plaintiff further alleges that the castor beans in said oats were a deleterious and poisonous vegetable substance, and were so scattered through the said oats that the same were not discovered by the plaintiff at the time of the purchase of the same, and could not be discovered without the knowledge that the same were in said oats, and without making an unusual examination of the same.

"The plaintiff further alleges that in the due course of his said business he, without knowing that said castor beans were in said oats, fed said oats to his and other horses, in the course of his business, and that thereby his boarding horses were seriously poisoned; and one of his boarding horses died from said poison, and three of plaintiff's horses died from said poison.

"That by reason of negligence of said defendants and their servants and employes as aforesaid, and by reason of the said castor beans being in said oats as aforesaid, and the facts therein stated as aforesaid, the plaintiff has been, by the said defendants, greatly damaged in the sum of $964 as follows, to-wit:

Boarding horse of Mose Weinberger, which died from being poisoned by castor beans, and which was of the value of ................ ............ ........ ......... ........ ......... $150

Three horses of the plaintiff, which died from being poisoned by said castor beans, and which were of the value of, each $75, total .......... ............ 225

Ten horses of the plaintiff, which were damaged in the sum of $30, each, total ........ ...... ............ ..... ........ 300

Doctor's bill and medicine ........ .. .... ......... .............. ............ 39

Damage to the business of plaintiff by his being deprived of the use of his livery horses for two weeks, being so poisoned ....... ......... '. ........................ .... 250

Total .........,. ........ ..... ......... . .... ..... .... ...... .. ...... . ...... ............ $964

"The plaintiff further alleges that he was not guilty of any contributory negligence in said cause or matter, and that he did everything in his power to care for, doctor and treat said animals and prevent damage thereto.

"The plaintiff further alleges that he had demanded of the said defendants payment of the said sum of money, as aforesaid, due the plaintiff, and which payment the said defendants refuse to make.

"Wherefore, the plaintiff prays judgment against the said defendants in the sum of $964, with legal rate of interest from the date of the filing of their original complaint and costs of this action, and all other proper relief. "BIERER & COTTERAL,
"Attorneys for Plaintiff."

The defendants answered said complaint first by general denial, second, admitting that they were partners and that they sold the oats to plaintiff as alleged in the complaint, but that he purchased the same upon his own judgment, and on his own view and inspection thereof at the time of said purchase; that the purpose of said purchase was unknown to the defendants, and that they had no knowledge of castor beans being in said oats, and deny that there were any beans in said oats, and that they did not sell said oats to the plaintiff

under any promise, express or implied, that they would furnish oats of any kind or character, but that he bought the same upon his own judgment; third, that if said oats did contain any poisonous substance that they were placed therein after the oats left the custody and control of the defendants, and had been placed therein by the plaintiff, or his servants in and about his livery barn.

To these answers plaintiff files a general denial.

The uncontroverted facts were, that the plaintiff purchased from the defendants twenty bushels of oats for which he paid thirty-five cents per bushel at the time of the purchase; that the defendants were at that time engaged in the feed business in Guthrie, in connection with the grocery business, and that plaintiff was, and for a long time had been engaged in the livery business; that the oats were delivered him by the defendants on the day of the purchase and placed in his livery barn; that his horses were fed from said oats that evening, three feeds the following day, and one feed on the following morning of the second day; that during the next day after the purchase of the oats some of his horses became sick; that he sent for a veterinary surgeon, who examined the horses and found them suffering from poison. An examination was made of the oats the following morning and they were found to contain considerable quantities of castor beans intermixed with said oats; that the plaintiff on being informed of the fact that the beans were in the oats, went to the defendant's place of business and informed them that the oats which he had purchased from them had castor beans in them and were unfit to feed to his horses; they informed him that if he did not want the oats to bring them back and they would pay him his money back. The unused portion of the oats were returned to Coyle & Smith's place of business, and they weighed them out and paid the plaintiff

thirty-five cents per bushel for the portion returned. Nothing was said at the time about the oats which had been used, nor was any express agreement made that the return of the oats and repayment of the purchase money should be in satisfaction of any damages resulting from the use of the oats which had been fed.

In addition to the general verdict, the jury returned the following special findings of fact:

"A. Are castor beans a poisonous substance when fed to horses? Yes.

"B. Were castor beans so handled in the business of Coyle & Smith, the defendants, as that they were liable to be and were mixed into the oats there kept for sale for feed? Yes.

"C. Did the defendants, or their agents, notify the plaintiff at the time he made the purchase of the oats, or at any time prior to that time, that the defendants were handling castor beans and oats in such a manner that the castor beans were liable to be in the oats sold plaintiff? No.          "O. M. WELLS, Foreman."

"1. Did the defendant on or about the 28th day of September, 1891, sell the plaintiff twenty bushels of oats at and for the agreed price of thirty-five cents per bushel? Yes.

"2. Was it a part of the agreement between the plaintiff and defendants at the time of the sale of such oats that said oats were being sold to the plaintiff for the purpose of being fed to his livery horses? Yes.

"3. Did the oats sold by the defendants to plaintiff contain mingled therewith castor beans? Yes.

"4. Were the defendants, or either of them, at the time of this sale of such oats to the plaintiff, actually aware of the presence of the castor beans in said oats? Unable to answer.

"5. Were such castor beans in such oats at the time of such sale? Yes.

"6. Did the plaintiff see and inspect the oats purchased of the defendant prior to his purchase? No.

"7. Did the plaintiff inform the defendants at the

time of such purchase that he was buying such oats for the purpose of feeding his horses with the same? Unable to answer.

"8. How much damage, if any, do you allow the plaintiff, for the loss of horses belonging to him? $180.

"9. How much damage, do you allow the plaintiff for the injury of horses belonging to plaintiff? $205.

"11. How much damage do you allow the plaintiff for doctor's bills and medicine? $35.

"12. How much damage do you allow the plaintiff for injury to his business by being deprived of the use of his horses? $150.

"13. Did the plaintiff go into the bin containing the oats, before his purchase, and look at the oats? No.

"14. Did he go into the bin with the clerk of the defendants, at the time of the purchase, and look at the oats? No.

"15. Did the defendants warrant the oats to plaintiff to be good wholesome oats, or did the plaintiff rely upon his own judgment? The oats were warranted to the plaintiff. C. M. WELLS, Foreman."

The petition in error contains eight specific assignments of error, all of which are embraced in the seventh, to-wit: "Error of the trial court in overruling defendants' motion for a new trial."

The motion for new trial presented to the court below for review all the rulings complained of.

Plaintiffs in error waive several of the alleged errors by failing to argue them in their brief.

The first ruling complained of is the action of the trial court in refusing to give instruction numbered four, requested by the defendants. The instruction is as follows:

"The buyer of an article, upon an implied warranty of quality or fitness, has two remedies, upon the discovery of the breach thereof. He may either return the goods purchased, and demand the purchase money to be returned to him, or he may retain the

goods and sue for his damages. The one remedy is exclusive of the other, and if you find from the evidence that the oats were sold by the defendants to the plaintiff upon the agreement or understanding that they were to be fed to the horses of the plaintiff, and that such oats contained castor beans, and that the plaintiff, after the discovery of that fact, returned said oats and received a return from the defendants of his purchase price, after knowing the dangerous consequences of their use, the plaintiff's election to receive a return of the purchase money for his oats would constitute a waiver of any right to prosecute this action for damages, and if you find such to be the fact, it will be your duty to return a verdict for the defendants."

This instruction does not contain a correct exposition of the law as applicable to the case at bar. The question as to whether or not the return of the unused portion of the oats and a repayment of the purchase price for them was a satisfaction of the entire claim of Baum, was a question for the jury to determine from all the facts and the intention of the parties. If all the oats had been returned and the entire purchase price repaid, it would have presented a different question. The sale as to the portion of the oats used, was not rescinded and could not have been. The damage was done by the portion used and not by the portion returned. It was a new and independent agreement to take back the oats not used and repay the consideration, and could only be a repudiation of the former agreement to that extent, and in the absence of an agreement to settle the damages occasioned by the breach of the warranty as to the used portion, and as to which the sale had become absolute, the right of action would still exist. The authorities cited by counsel for plaintiffs in error do not support their position.

The case of *Alden v. Thurber*, 149 Mass. 271, 21 N. E. 312, is relied on by plaintiffs in error. That case, Thurber & Co. agreed to sell Alden about ten thousand

pounds of raspberry jam.    They sent the jam to Alden at Boston and he remitted to them one thousand dollars in part payment of the agreed price.    After the receipt of the jam, Alden claimed that it was not pure raspberry jam as his contract called for, and wrote Thurber & Co. to that effect.    Thurber & Co. insisted that the jam was the kind they had agreed to furnish, but wrote to Alden that notwithstanding that fact, as they still desired to retain his trade, they were willing to receive the whole lot back and credit it up to him together with the freight charges, and in this way settle the matter.    Upon receipt of this letter, Alden sent back all the jam, except one keg that he had sold, and requested Thurber & Co. to remit his money at once.    Thereupon, Thurber & Co. credited Alden with the jam returned and the expense of freight and cartage and remitted him the balance of the one thousand dollars.    The court said:

"This was a mutual rescission of the contract.  The letter of the defendants was an offer to settle and compromise the controversy between the parties.  The acts and conduct of the plaintiff was an acceptance of that offer.    This was a waiver of the right to sue for any preceding breach of the contract.    The performance by the defendants of the new agreement operated as an accord and satisfaction for any breach and discharged the old contract.  Such was clearly the intention of the defendants, and the plaintiff accepted their offer unconditionally, and this induced them to perform it."

The court bases its conclusion in the above case upon the ground that by the agreement of the parties the new contract was to be an entire settlement of the matters between them and amounted to an accord and satisfaction, a compromise.

There are none of the elements of a compromise in the case at bar, nor does the evidence present any of the elements of an accord and satisfaction.    There

was no agreement to settle anything. Coyle & Smith proposed ·to repurchase the unused oats, they were returned, and they weighed them out and paid for them at the original price. Nothing was compromised and there was nothing else surrendered on either side. Coyle & Smith got back the same oats they sold, at the same price per bushel, except the portion which had done the damage, and nothing was said as to this portion, or as to a settlement or compromise of anything.

The payment of a portion of an undisputed debt, although accepted in full satisfaction and a receipt in full is given, is not a satisfaction of the balance, and will not, where there is no new consideration, estop the creditor from recovering the remainder of such debt. (*St. Louis, Ft. S. & W. R. Co. v. Davis* [Kan.] 11 Pac. 421.) In the case at ·bar there was no new consideration passed. The oats were presumably worth as much when returned as when originally purchased, and they were retaken at the original purchase price, and the exact amount returned, and no more paid for. Neither party mentioned the claim for damage occasioned by the portion not returned, and nothing was said as to a compromise or a final or full settlement.

To constitute accord and satisfaction, that which is received by ·the creditor must be accepted by him in satisfaction, and whether there was such an acceptance is a question for the jury. (*Frick v. Algeier*, 87 Ind. 256; *Hardman v. Bellhouse*, 9 M. & W. 596; *Hearn v. Kiehl*, 38 Pa. St. 147; *Western Union Tel. Co. v. Buchanan*, 35 Ind. 429.)

The refused instruction states, as a proposition of law, that if Baum returned the oats and received pay for same, that such return and repayment was a bar to a recovery for damages. It did not submit the question to the jury to be determined as a fact whether or not

there had been a compromise or accord and satisfaction, and the court correctly refused to give it.

*Rogers v. Rogers*, 139 Mass. 440, cited by plaintiff in error, fully supports this doctrine.    In that case the court says:

"Whether the new agreement was substituted for the old, and thus operated as a rescission or discharge of it, must be determined by the intention of the parties, to be ascertained from their correspondence and conduct."

See, also, supporting this position: *Peck v. Requa*, 13 Gray, 407; *Monroe v. Perkins*, 9 Pick. 298; *Holmes v. Doane*, 9 Cush. 135; *Cooke v. Murphy*, 70 Ill. 96; *Moore v. Locomotive Works*, 14 Mich. 266.

In the case of *Thornton v. Wynn*, 12 Wheat. 193, the the question before the court was:

"Not whether the purchaser of a horse, which is warranted sound, has a remedy over against the vendor upon the warranty, in case it be broken, but whether in an action against him for the purchase money, he can be permitted to defend himself by proving a breach of warranty."

And on this question the court held to the ancient, but now obsolete rule, that the vendee must pay the purchase money and was put to his separate action upon the warranty for his damages, unless it was shown that the vendor knew of the unsoundness of the horse, and the vendee tendered a return of it within a reasonable time.    There are some dicta in the discussion of the case, that would seem to support counsels' position, but the law of the case is not in conflict with the views we have expressed in the case under consideration.

In *Chapman v. Seorle*, 3 Pick. 38, after there had been a sale and delivery of goods, there was an agreement to take the goods back and return the consideration. This agreement was never consummated.    It was con-

tended that this agreement was a rescission of the contract of purchase.    The court said:

"It was contended on the part of the defendant that the contract was rescinded by the original parties before the plaintiff's title accrued.    If our view of the case is correct, the contract was executed, and was not merely executory, and so it could not be considered as rescinded, which must be understood as discharging or canceling of it while it remained to be performed.

"Finally, it was contended for the defendant that there was a resale of the property by Ludlow to Whiting before the plaintiff's title accrued.    But upon a careful review of the evidence, we can perceive only an agreement to reconvey at some future time, and upon certain conditions, which were never complied with before Ludlow was obliged to assign all his property to the plaintiffs."

We find nothing in the case last cited to support the contention of counsel for plaintiffs in error; upon the contrary, it supports the theory that the sale of the oats was an executed contract and there being nothing further to be done under the contract of sale, it could not be rescinded, and that the agreement by which a portion of the oats were returned was a resale or new agreement.    The warranty found to have been made at the time of the sale of the oats is a collateral agreement and not a condition of the sale, and this action is for a breach of the warranty and not an action to enforce the contract.

In *Prescot v. Wright et al*, 4, Gray 461, an action of tort was brought for breaking and entering the plaintiff's close in Groton, and cutting and carrying away wood and timber.    The defendant answered, setting up a license to enter, and a purchase of the wood and timber.    The sale of the wood and timber was not denied, but the plaintiff offered to prove that before the bringing of his action, he discovered that the defendants had made false representations and concealed .

the truth from him whereby he was induced by fraud to enter into the contract of sale, and that he had seasonably tendered back the purchase money and a note executed in part payment for the wood and timber.

The trial court held that the plaintiff, having made a sale of the timber, could not maintain his action, and took the case from the jury and rendered judgment for the defendants. The only question before the supreme court was as to the correctness of this ruling, and the court held that the question of the fraud and rescission should have been submitted to the jury.

*Park et al. v. Richardson & Boynton Co.* 81 Wis. 399, 51 N. W. Rep. 572, is a case relied upon by plaintiff in error. This was an action by *Park et al. v. Richardson & Boytnon Co.* to recover damages for alleged defects in a furnace sold to plaintiffs and placed in their store house for heating purposes. Under the contract of sale there was an express agreement that if the furnace failed to work satisfactorily, the vendors would substitute a different size, or remove the furnace and refund the amount paid for same at the election of the vendees. The furnace failed to work, as agreed.

The plaintiffs in their petition blended two causes of action, one for the return of purchase money and the other for breach of warranty. The court held, on appeal, that the plaintiffs could not rely upon both remedies in one action. That he might rely upon his contract and return the property and recover his purchase money, or, he could keep the property and sue for breach of warranty, and that the two remedies were alternative under the terms of his agreement.

The court further held, that keeping and paying for the property was no waiver of the right to sue for damages for a breach of warranty.

We find nothing in this case to conflict with our view of the case at bar. The keeping and paying for

the oats that had been fed before the discovery of their quality was not a waiver of any right to recover for damages occasioned by their use; and the resale of the unused portion to the original vendor, without any agreement or intimation by either party that such resale should be in satisfaction or settlement of such damages, is no bar to a recovery for breach of warranty. Every breach of warranty occasioning any damage or detriment gives a right of action to the party damaged, and such right of action continues in his favor until the same is satisfied, waived or barred in some manner. There is nothing in the case at bar that shows any intent or purpose on the part of the parties to satisfy or waive this right, and we find nothing in the law, or the acts of Baum, that will bar such right.

*Philadelphia Whiting Co. v. Detroit White Lead Works*, 24 N. W. Rep. 881, is another case relied upon by counsel for plaintiffs in error.

We find nothing in the case to support their contention. The Philadelphia Whiting Co. sold to the White Lead works three hundred barrels of best commercial whiting, to be used in manufacturing putty. After using several barrels of the whiting in the manufacture of putty for their trade, they found it of an inferior quality and so notified the vendors, and stored the remainder for the use of the vendors and refused to pay for same. The vendors sued for the purchase price, the vendees set up the breach of contract and damages and they recovered judgment against the vendors for five hundred, nine dollars and twenty-one cents. The vendors appealed. The only questions determined by the appellate court were:

1. Where the contract for sale of goods is made by letter, such letter or letters are the only evidence that can properly be introduced to show what the contract between the parties was.

2. Where the character of the goods purchased is such that their quality cannot be determined by looking at and examining them, but by actual use only, the purchaser will be entitled to a reasonable time in which to test the goods and ascertain whether they are the kind ordered, and until this question is determined the retention of the goods does not amount to an acceptance thereof.

Evidently the foregoing case treated of a conditional sale, where the ownership of the property never passed to the vendees, and on the discovery of the inferior quality of the goods they had a right to reject the goods and refuse payment. It was not a rescission of the contract, but a refusal to consummate a contract.

In said case it was contended on appeal that the trial court should have allowed the plaintiffs to recover for the value of the forty-two barrels used by the vendees in testing the whiting before they found out its inferiority. On this question the supreme court of Michigan says:

"Had this been done, simple justice would have required the allowance to the defendant of the damages it sustained in the use it made of the plaintiff's goods in testing the quality, and this according to the undisputed testimony was at least one thousand dollars. So that it clearly appears the plaintiff has not been injured by the action of the court on this point. Certainly the defendant derived no benefit from the amount used."

The principle announced above is applicable to the case at bar. Coyle & Smith received and retained pay for the portion of the oats that were used before their poisonous quality was discovered and simple justice would require the allowance to Baum of the damages he sustained in the use he made of the oats that were fed to his horses.

We have reviewed or examined all the other authorities cited by counsel for plaintiffs in error so far as

the same are at our command, and fail to find any case announcing a doctrine or rule which in our view of the case at bar, renders the action of the trial court erroneous in refusing the instruction requested by plaintiffs in error.

The rule embodied in the refused instruction is the law as applicable to a certain class of cases, but would be misleading in the case at bar.

The next contention of plaintiffs in error is, that the court erred in overruling their motion to require the plaintiff in the court below to elect whether he would proceed upon the ground of tort or of contract.

The petition sets out a state of facts which might sustain an action for deceit or one for breach of warranty. An action to recover damages for deceit is an action in tort, while an action to recover for breach of warranty, express or implied, is an action *ex contractu.* A motion to require the plaintiff to separately state and number his causes of action would have been the proper practice, but it does not appear that any objection was made to the petition for this cause.

If the plaintiff relied upon his allegations that the defendants by their negligence and carelessness permitted castor beans to become intermixed with the oats being kept for feed of stock, and that he had no knowledge of such acts or the condition of such oats, and that the defendants, knowing the condition and quality of the oats, and the poisonous quality of the beans sold same to plaintiff, representing them to be good and fit for his horses to eat, then he should have brought his action for deceit, and it was immaterial about any waranty; or on the other hand, if he intended to rely upon the implied warranty from the fact that he purchased and paid for oats to be used for feeding his horses, which was known to defendants at the time of sale, then it was immaterial

whether the defendants knew of the beans being in the oats or not. It appears from the record though, that this was tried in the court below upon the theory that it was an action to recover damages for a breach of implied warranty.

The testimony was introduced on this theory. The court instructed the jury on such theory; the jury were requested to find specially on the question of warranty and did so find.

It is a familiar rule of practice that parties must present and try their case upon some definite and settled theory, and an appellate court will look to that theory of the case to determine the question of whether error was committed.

It is correct, as contended by counsel for plaintiffs in error, that it is not proper pleading or practice to blend tort and breach of contract in the same pleading, and if it appears that plaintiffs in error were prejudiced by this course the cause should be reversed. But in the special findings of fact the jury found in favor of the defendants on the question of negligence. The burden was on the plaintiff to prove this allegation, and a failure of the jury to find affirmatively in his favor on the question is equivalent to a finding for the defendants. The jury further found that there was a sale of the oats as claimed; that they were sold with a warranty, and they base the amount of damages upon the consequences of the breach, and make no finding of fraud or deceit. Hence, we think the defendants were not prejudiced or injured by the failure of the court to require the plaintiff to elect upon what theory he would proceed, and if error was committed it was harmless error. If there had been no special findings and we were compelled to look solely to the general verdict for light, we might be warranted in concluding that the jury took the question of negligence into consideration in fixing the amount of the

damages to be assessed, but the answers to the special findings excludes any such inference.

We agree with counsel for plaintiffs in error in their argument that if there was a warranty either express or implied, the plaintiff would have a right of action on the breach of same, whether the vendors were negligent or otherwise, and the measure of damages would be the same in either case, and the question of negligence or fraud should have been eliminated from the case, but unless it appears that that the vendors were injured thereby, they are in no position to complain.

The next contention is that the court erred in the instruction to the jury as to what constitutes a warranty.

The jury found in answer to the special interrogatories that the defendants warranted the oats to the plaintiff to be good wholesome oats. We must look to the evidence in the case, and the instructions of the court, to determine upon what this finding was based, or upon what theory of the law and facts the jury arrived at this conclusion.

The jury found specially that the defendants sold to plaintiff twenty bushels of oats at the price of thirty-five cents per bushel; that it was a part of the agreement at the time of the sale, that said oats were being sold for the purpose of being fed to plaintiff's livery horses, and that said oats contained castor beans at the time they were so sold; that the plaintiff did not see or inspect the oats at or prior to the purchase, nor did he go into the bin where the oats were and look at them prior to the purchase. They further found that the defendants were handling castor beans as a part of their business, and they did not inform plaintiff of such fact.

The general verdict was for the plaintiff, assessing his damages at one hundred and eighty dollars for

loss of horses by death; two hundred and five dollars for injury to his other horses; thirty-five dollars for doctor bills and medicine; one hundred and fifty dollars for injury and loss to his business by being deprived of the use of his horses occasioned by their sickness.

There is no evidence of any express warranty at the time of the sale, and hence, the jury must have found the warranty implied from the sale itself and the law as given by the court.

The court on this question instructed the jury as follows:

"6. The court instructs the jury that where goods are purchased from merchants in the usual course of business, said merchants warrant by sale thereof to one that buys for his own actual use, and not for the purpose of sale, that such goods are sound and wholesome for the use and purposes to which such goods are ordinarily put.

"If the jury find, by a preponderance of the evidence, that the plaintiff herein was engaged in the livery business, and that such fact was known to the firm of Coyle & Smith, or their agents and employes, and if you further find that the plaintiff in this case purchased of the defendants the oats alleged to have contained a mixture of castor beans, and that said defendants, knowing that the plaintiff intended to use such oats for the purpose of feeding his horses, sold the plaintiff oats, containing a mixture of castor beans, and said plaintiff fed the same to his horses and could not, by the use of ordinary care, have discovered that the oats contained the mixture of castor beans, and if the jury further find that such castor beans were intermingled with the oats at the time the same were sold to said plaintiff, then, the court instructs the jury that the defendants in this case are liable in damages to the extent of the injury suffered by plaintiff by reason of the fact that the oats so purchased were by the plaintiff fed to the stock of plaintiff."

The first general proposition embraced in the foregoing instruction is subject to some exceptions and

might be objectionable, were it not followed by the portion applicable to the facts in this case in which the jury is specifically directed as to their duty in case they find certain facts from the evidence.

We think this instruction embodies the law as supported by the greater weight of modern authority regardless of any statute on the question.

The findings of fact in this case show that the oats were sold by the vendors to the vendee without his inspection, for the particular purpose of being fed to his livery horses.

The general rule in such cases, as supported by a respectable weight of authority, is, that in sales of goods or chattels by description, when the buyer has not inspected the goods, there is an implied warranty that they shall be fit for the particular purpose to which they are to be applied, when that purpose is known to the vendor. (*Morse v. Union Stock Yards Co.* [Or.] 28 Pac. 2, 14 L. R. A. 157; *Best v. Flint,* 58 Vt. 543; *Jones v. Bright,* 5 Bing. 533; *Gerst v. Jones,* 34 Am. Rep. 773; *Dome v. McCormich,* 50 Barb. 116; *Fairbanks Canning Co. v. Metyger et al.* 23 N. E. 372; *Hoover v. Peters,* 18 Mich. 51; *Sinclair v. Hathaway,* 57 Mich. 60; *Show v. Smith,* [Kan.] 25 Pac. 886; *Gommel v. Gunby,* 52 Ga. 504; *French v. Wining,* 102 Mass. 132; *Poland v. Miller,* 95 Ind. 387; *Rice v. Forsyth,* 41 Md. 389; *Howard v. Hoey,* 23 Wend. 350; *Van Wick v. Allen,* 69 N. Y. 61; *White v. Miller,* 71 N. Y. 131.)

And the rule is without exception that when goods are sold for a particular purpose, and the buyer has no opportunity to inspect them, that there is an implied warranty that such goods shall be suitable for the particular purpose for which they are sold.

We think the plaintiffs in error have no room to complain of the instruction given.

It is next contended that the court erred in admit-

ting proof and giving instructions as to the measure of damages.

The court instructed the jury that if they found for the plaintiff, the measure of his recovery would be:

1. The value of the horses which died from the effects of the poisonous substance in the oats,

2. And damages resulting from a permanent injury to the living horses, occasioned by eating the oats and beans.

3. The loss to plaintiff's business for use of his horses during the time they were sick.

4. The amount of money expended by plaintiff in the proper treatment of the sick animals.

This instruction is as favorable to the defendants as they could expect. All the elements of damage embraced in the instruction are traceable directly to the use of the castor beans, and are the actual and necessary results of feeding the horses the poisoned oats. The instruction is within the rule laid down by Sutherland on Damages, 56:

"There must be not only a legal connection between the injury and the act complained of, but such nearness in the order of events, and closeness in the relation of cause and effect, that the influence of such act may predominate over other causes, and concur to produce the consequences, or be traced to those causes."

The measure of damages in ordinary cases of injury to personal property, where the property is not entirely lost or destroyed or substantially so, but is only impaired in value or partially destroyed, is the difference between the value before the injury and immediately thereafter, and reasonable expense incurred, or value of time spent in reasonable endeavors to preserve or restore the property injured. (Field Damages, 621; *Eastman v. Sanborn*, 3 Allen, 594; *Harrison v. Mo. Pac. R. R. Co.* 88 Mo. 625.)

And in case of injury in addition to the above, the

temporary loss of its use, and interest from date of action. (*Atlanta & West Point R. Co. v. Hudson*, 62 Ga. 679; *Jackson v. St. L. I. M. & S. R. Co.* 74 Mo. 526; *Meyer v. A. & P. R. R. Co.* 64 Mo. 542; *Toledo P. W. R. Co. v. Johnson*, 74 Ill. 83.)

It is the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary care and effort, and at moderate and reasonable expense, and for such reasonable exertion and expense in that behalf the wrong-doer is liable. (3 Parson's Contracts, 178.) "Expenses incurred in good faith in attempting a cure may be recovered in addition to the actual value of the animal at the time the injury occurred in a suit for damages for an injury to an animal by which it was rendered entirely worthless, although the defendant was not consulted in relation to the matter of the attempted cure." (*Ellis v. Hilton*, Mich. 6 L. R. A. 454; *Watson v. Lisbon Bridge*, 14 Me. 201; *Murphy v. McGrow*, 41 N. W. 917; *Long v. Clapp*, 15 Neb. 417.)

"The damage to be recovered must always be the natural and proximate consequence of the act complained of," says Mr. Greenleaf, and those results are proximate, which the wrong-doer from his position must have contemplated as the probable consequence of his fraud or breach of contract. (*Smith v. Bolles*, 132 U. S. 125.)

We find no objection to the instruction on the measure of damages, and as the proof was limited to the character of damages embraced in the instructions, there was no error on this question.

It is next contended by plaintiff in error that the court erred in admitting evidence of actual values without showing there was no market value for the kind of horses alleged to have died.

The evidence is confusing on this question, but on an examination as a whole, we do not think the evi-

dence susceptible of the construction and open to the objection urged. The witnesses testified as to their general knowledge of the horses in question, of their knowledge generally of the prices and values of livery stock at that time; that these horses were average livery horses, and that such horses were of such and such values. We think this fairly implies the market value at that time. The witnesses fixed no other basis of knowledge, and when one speaks generally of the values of chattels, it means their value in the market. This is inferred unless a different basis of value is fixed by the witnesses or it is apparent that the witness bases his value on a different foundation.

As to the injury to the horses that were sick, the veterinary in charge testifies as to the value of the horses before they were sick; he also testified as to the effect of castor beans upon the digestion and stomach of the horses, and the permanency or general effect of the injury on the particular horses that he treated, and then gave his opinion or judgment as to the damage done. This was in the nature of expert testimony, and he had a right to express his opinion. The rule that the damage is determined by the difference in value of the horses before and after the injury, was not violated in his testimony, but was differently applied. He gave the value before using and the damage done. The result was the same as if he had given the value before and the value afterwards. It was a matter of calculation as to the amount from either basis, and the result would not be different.

There are some of the proceedings that are properly subject to criticism, but, upon the whole, we think the verdict and findings reached were correct under the pleadings and evidence, and that a correct conclusion was reached under the law, and, although there may be errors, unless they have resulted in substantial

injury or injustice to the complaining party, the judgment must be affirmed.

We find no error in the record that will justify a reversal of the judgment.

The.judgment of the district court is affirmed at the cost of plaintiffs in error.

Dale, C. J., having tried the case below, and Bierer, J., having been of counsel in the case, not sitting; all the other Justices concurring.